<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **EXTENET SYSTEMS, INC.,** *Plaintiff,* v. **TOWNSHIP OF NORTH BERGEN, NEW JERSEY, et al.,** *Defendants.* | Civil Action No. 20-15098 OPINION |

**ARLEO, UNITED STATES DISTRICT JUDGE**

**THIS MATTER** comes before the Court on Plaintiff Extenet Systems, Inc.'s ("Plaintiff") Motion for Summary Judgment, ECF No. 24. Defendants Township of North Bergen, the North Bergen Township Board of Commissioners, Mayor Nicholas J. Sacco, Commissioner Hugo Cabrera, Commissioner Frank Gargiulo, Commissioner Julio Marenco, and Commissioner Allen Pascual[1] (collectively the "Township" or "Defendants") oppose the Motion. ECF No. 29. For the reasons explained below, Plaintiff's Motion is **GRANTED in part** and **DENIED in part**.

**I.  BACKGROUND**[2]

This action brought pursuant to the Telecommunications Act of 1996, 47 U.S.C. §§ 253, 332 ("TCA"), arises from the Township's denial of Plaintiff's application to install forty Small

---

[1] Mayor Sacco and the Commissioners are sued only in their official capacities.

[2] These facts are drawn from Plaintiff's Statement of Material Facts ("PSOMF"), ECF No. 24.1, Defendants' Supplemental Statement of Disputed Material Facts ("DSOMF"), ECF No. 29.4, at 10-13, and the relevant record. Disputes of fact are noted.

Wire Facilities ("SWFs")[3] in the Township's public rights-of-way (the "Application"). See generally Compl., ECF No. 1.

Plaintiff is a neutral host infrastructure provider for wireless communication carriers licensed by the Federal Communications Commission ("FCC"). PSOMF ¶ 1. Beginning in February 2019, Plaintiff engaged representatives of the Township in discussions concerning the proposed SWFs. PSOMF ¶ 3. Thirty-nine of the proposed facilities would be "strand-mounted" antennas attached to the utility lines a few feet from an existing utility pole, while the remaining antennas would be installed directly atop a utility pole. PSOMF ¶¶ 9-10.

On December 20, 2019, third-party V-Comm, LLC prepared an engineering report to assess whether the proposed strand-mounted SWFs would comply with FCC regulations governing the maximum permissible exposure to Radio Frequency ("RF") omissions. See Certification of James V. Sessions Ex. 1, ECF No. 24.24 (the "V-Comm Report"). The V-Comm Report concluded that RF exposure would be "well below" FCC limits at ground level but that some areas near the antennas would experience RF omissions exceeding FCC "general population" or "occupational" limits. Id. at 3. The Report advised that accordingly, certain signage alerting workers to the RF emissions should be mounted on nearby utility poles (the "Warning Signs"). Id. at 1. Ultimately, the V-Comm Report concluded that with the appropriate signs in place, the "facility in question will be in compliance with all appropriate Federal regulations in regards to [RF] Emissions." Id.

On May 27, 2020, the Township adopted a resolution authorizing the appropriate municipal officials to execute a "Right of Way Occupancy Agreement" permitting Plaintiff to install the

---

[3] SWFs are antenna structures that provide personal wireless service and meet certain size requirements. See 47 C.F.R. § 1.6002(i), (l).

SWFs.  PSOMF ¶ 28; Certification of Richard Lambert ("Lambert Cert.") Ex. B, ECF No. 24.16. However, the Township never actually executed the agreement.  PSOMF ¶ 29.[4]  Thereafter, on July 23, 2020, Township attorney Thomas Kobin ("Kobin") informed Plaintiff via email that due to the Township's concerns regarding the "content" of the proposed Warning Signs, the Township was unwilling to approve the SWFs.  PSOMF ¶ 33; Lambert Cert. Ex. C, ECF No. 24.17.

Despite Kobin's email, Plaintiff formally submitted its Application for approval of the proposed SWFs on August 25, 2020.  PSOMF ¶ 36; see also Lambert Cert. Ex. D, ECF No. 24.18. On October 26, 2020, Kobin sent Plaintiff a letter informing it that the Application was denied for four reasons: (1) "the antennas pose a danger to the public, regardless of whether the radio frequency emitted from the antennas is within that required by FCC"; (2) the Warning Signs "will, at minimum, cause public alarm and will negatively impact property values"; (3) Plaintiff did not submit copies of its agreements with the owners of the relevant utility poles permitting the installations; and (4) the appearance of certain equipment to be utilized "d[id] not match or conform to existing" equipment.  Lambert Cert. Ex. E (the "October 2020 Letter"), ECF No. 24.19.

Two days later, on October 28, 2020, Plaintiff commenced the instant action by filing a Complaint for Declaratory and Injunctive Relief pursuant to the TCA.  ECF No. 1.  The Complaint asserts eight causes of action against Defendants, generally alleging that the Township failed to properly consider the Application and then denied it for impermissible reasons, in violation of the TCA and New Jersey law.  Compl. ¶¶ 74-143.  Defendants filed an Answer on December 28, 2020, ECF No. 5.

---

[4] Township regulations provide that no antenna may be installed in the right of way until a Right of Way Occupancy Agreement is approved and executed by the Township.  PSOMF ¶ 6.

After this action commenced, on May 26, 2021, Kobin sent Plaintiff an additional letter (the "May 2021 Letter") stating that the Township had denied the Application for three additional reasons: (1) Plaintiff did not provide a "propagation plot"; (2) the Application failed to demonstrate that the RF emissions from the proposed antennas would comply with FCC regulations; and (3) no Right of Way Occupancy Agreement had been executed. PSOMF ¶ 61.[5] As of the date of the Motion, the Township had not approved the Application nor executed a Right of Way Occupancy Agreement. Id. ¶ 63.

Following discovery, Plaintiff now moves for summary judgment. ECF No. 24.

## II.     LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), the Court will grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with available affidavits, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "Summary judgment may be granted only if there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party." Miller v. Ind. Hosp., 843 F.2d 139, 143 (3d Cir. 1988).

## III.    ANALYSIS

Plaintiff argues, among other things, that Defendants violated the TCA by denying the Application due to the perceived environmental effects of RF emissions, a subject that is expressly preempted by federal law. The Court agrees.

---

[5] The May 2021 Letter appears to have been unintentionally omitted from Plaintiff's electronic filing. Nonetheless, the Parties agree to its substance.

4

A. **Regulatory Framework**

Section 332(c)(7) of the TCA "preserves the traditional authority of state and local governments to regulate the location, construction, and modification of wireless communications facilities . . . but imposes 'specific limitations' on that authority." T-Mobile S., LLC v. City of Roswell, Ga., 574 U.S. 293, 300 (2015) (citation omitted). Specifically, once a municipality is presented with a request to construct personal wireless service facilities, the TCA requires the locality to (a) follow certain procedures; (b) provide written reasons if it denies the application; and (c) refrain from considering certain substantive rationales while assessing the application. 47 U.S.C. § 332(c)(7)(B)(i)-(iv).

Procedurally, a local government must act on an application within a "reasonable period of time." 47 U.S.C. § 332(c)(7)(B)(ii). Where, as here, a township receives a request to install SWFs onto existing structures, the municipality's designated "siting authority" must respond within sixty days, unless that period is tolled by specifically defined events. 47 C.F.R. § 1.6003(c)(1)(i). The Parties agree that the Township's siting authority is Peter Hammer ("Director Hammer"), the Township's Director of Community Improvement. PSOMF ¶ 40; DSOMF ¶ 26.[6]

A municipality's denial of an application must be "supported by substantial evidence contained in a written record." 47 U.S.C. § 332(c)(7)(B)(iii). "Substantial evidence . . . is 'more than a mere scintilla'" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (citations omitted). The town's statement of reasoning must be provided "essentially contemporaneously" with a written notice of denial. City of Roswell, 574 U.S. at 307-08 (holding that city violated the TCA

---

[6] The Court declines to reach Plaintiff's argument that the Township violated 47 C.F.R. § 1.6003 because Township attorney Kobin's October 2020 Letter suggests that Kobin himself—as opposed to the siting authority—denied the Application. Even accepting Defendants' position that Kobin wrote the October 2020 Letter on behalf of the siting authority, summary judgment in favor of Plaintiff is warranted.

by failing to provide its reasoning for twenty-six days after denying an application to construct cell towers). The Supreme Court has emphasized that a locality's written reasons must be "clear enough to enable judicial review" so a court can "determine whether a locality had violated the[] substantive provisions" of the TCA in rendering its decision. Id. at 301.

Among other substantive restrictions in the TCA, "[n]o . . . local government or instrumentality thereof may regulate the placement, construction, and modification of personal wireless service facilities on the basis of the environmental effects of [RF] emissions to the extent that such facilities comply with [FCC] regulations concerning such emissions." 47 U.S.C. § 332(c)(7)(B)(iv). "Environmental effects" include the effect of RF emissions on human health. See T-Mobile Ne. LLC v. Loudoun Cnty. Bd. of Supervisors, 748 F.3d 185, 194 (4th Cir. 2014); T-Mobile Ne. LLC v. Town of Ramapo, 701 F. Supp. 2d 446, 460 (S.D.N.Y. 2009); see also City of Portland v. United States, 969 F.3d 1020, 1046 (9th Cir. 2020) ("The FCC is obligated to evaluate the potential impacts of human exposure to [RF] emissions. . . . In the [TCA], Congress preempted all municipal regulation of radiofrequency emissions to the extent that such facilities comply with federal emissions standards."); 47 C.F.R. § 1.1310(a) (promulgating standards "to evaluate the environmental impact of human exposure to [RF] radiation"). Thus, so long as a proposed facility would comply with FCC regulations, a town may not deny an application based on a perceived threat to human safety arising from RF emissions.

Finally, "any person adversely affected" by a local government's violation of Section 332(c)(7) may "commence an action in any court of competent jurisdiction" within thirty days of the offending decision. 47 U.S.C. § 332(c)(7)(B)(v). The parties agree that Plaintiff timely commenced this action. PSOMF ¶ 70.

### B. Consideration of Environmental Factors

Count IV of the Complaint alleges that Defendants impermissibly denied Plaintiff's Application to construct SWFs based on the environmental effects of RF transmissions. Compl. ¶¶ 106-11. Plaintiff now maintains that following discovery, the undisputed facts demonstrate that Defendants denied the Application based on a perceived threat to human safety untethered to FCC standards. Plaintiff further argues that the remaining reasons articulated in the October 2020 Letter were unsupported by substantial evidence and cannot cure the defect in Defendants' denial of the Application. Finally, Plaintiff contends that the supplemental reasoning reflected in the May 2021 Letter was untimely and cannot be considered. The Court agrees with each point.[7]

As a threshold matter, Defendants do not meaningfully argue that they denied the Application due to a perceived deficiency in FCC compliance. The October 2020 Letter did not raise any compliance issues and indeed expressly stated that the Township's concerns existed "regardless of whether the [RF] emitted from the antennas is within that required by FCC." Oct. 2020 Ltr. While the May 2021 Letter did allege that the Application failed to prove FCC compliance, that letter was submitted nearly seven months after the Township denied the Application. The Court may not consider this rationale—or any other reasoning in the May 2021 Letter—because the letter was not provided "essentially contemporaneously" with the Township's written denial. City of Roswell, 574 U.S. at 307-08.[8]

---

[7] The Court need not reach Plaintiff's alternative arguments that the Township violated the TCA's substantive proscriptions on "discriminat[ing] among providers of functionally equivalent services," 47 U.S.C. § 332(c)(7)(B)(i)(I), effectively "prohibiting the provision of personal wireless services," id. § 332(c)(7)(B)(i)(II), and erecting unlawful barriers to entry, id. § 253(a). The Court also declines to reach Plaintiff's claims under New Jersey law. As set forth below, Plaintiff seeks identical injunctive relief under each count of the Complaint.

[8] Magistrate Judge Hammer previously found that the topics discussed in the May 2021 Letter are irrelevant to this action, and Defendants did not appeal that decision. See ExteNet Sys., Inc. v. Township of North Bergen, 20-15098, 2021 WL 5782977, at *3 (D.N.J. Dec. 7, 2021).

Moreover, Defendants have not directed the Court to any evidence suggesting the proposed facilities would contravene FCC guidelines.[9] Prior to the Application, an independent engineering firm concluded that while certain areas in the air directly surrounding the strand-mounted antennas would experience RF radiation levels exceeding FCC limits, the SWFs could be brought into compliance by mounting Warning Signs alerting workers to the local RF emissions. See V-Comm Report at 1, 3. Defendants' RF expert later testified: "based on the analysis I did of the V-COMM report, I believe that the report would suffice [the FCC Office of Engineering and Technology's ("OET")] Bulletin 65," the relevant regulatory statement on evaluating RF exposure. PSOMF ¶ 25.[10] Consequently, there is no factual dispute as to whether the Township denied the Application due to concerns of FCC compliance.

Absent such regulatory deficiencies, the TCA expressly prohibited the Township from considering "environmental effects" such as an effect on human health in its zoning decisions. 47 U.S.C. § 332(c)(7)(B)(iv). On this point, the record is clear that a fear for human safety was the most important reason—if not the sole reason—that the Township denied the Application. Before

---

[9] In their opposition, Defendants point to a second engineering report that Plaintiff commissioned during this litigation, which shows that four of the proposed SWFs would be located nine feet or less from adjacent structures. DSOMF ¶ 5; see Certification of Gregory D. Meese ("Meese Cert.") Ex. I at 11-13, ECF No. 24.12. Yet that same report concludes, on the very same page, that based on the location, design, and positioning of the SWFs, "there are no accessible areas within the [FCC-dictated] General Population (GP) compliance boundary at any of these nodes." Id. at 11. Again, Defendants have proffered no contrary evidence.

[10] The FCC regulation governing RF exposure limits provides that "[d]etailed information on our policies regarding . . . compliance with . . . exposure limits can be found in the most recent edition of FCC's OET Bulletin 65." 47 C.F.R. § 1.1310(d)(4). Bulletin 65 provides the following, in relevant part:

> [F]or a transmitting facility or operation to be out of compliance with the FCC's RF guidelines an area or areas where levels exceed the MPE limits must, first of all, be in some ways accessible to public or to workers. . . . The FCC guidelines specify exposure limits not emission limits, and that distinction must be emphasized. . . . When accessibility to an area where excessive levels is appropriately restricted, the facility or operation can certify that it complies with FCC requirements.

See FCC OET, Evaluating Compliance with FCC Guidelines for Human Exposure to Radiofrequency Electromagnetic Fields, OET Bull. No. 65, at 52-53 (Aug. 1997). Bulletin 65 further endorses the use of "hazard warning signs" as a means of restricting access. Id. at 53 & n.32.

Plaintiff even filed the Application, it received an email from Defendants' attorney stating that the Township was unwilling to move forward due to the "content" of the FCC-required Warning Signs alerting workers to the dangers of RF exposure. PSOMF ¶ 33. The October 2020 Letter denying the Application reiterated and expanded upon this concern, stating that (a) "[t]he application on its face <u>indicates that the antennas pose a danger to the public</u>, regardless of whether the [RF] frequency emitted from the antennas is within that required by FCC regulations; and (b) "based on the required signage, <u>people spending extended time near the antennas face a real danger</u>." Oct. 2020 Ltr. at 1 (emphases added). Finally, the Township's designated siting authority, Director Hammer, testified as follows after reviewing the October 2021 Letter:

> Q. And whose decision was that that the applications were denied?
>
> A. Under my recommendation.
>
> . . .
>
> Q. What was the reason that you thought they should be denied?
>
> A. It states it in that letter.
>
> Q. But I want to hear it from you.
>
> A. <u>The danger of the RF signals to the general public</u>.
>
> Q. And what was that based on?
>
> A. The distances that they have said these cause -- what would you call these notices? That's what it's based on.
>
> Q. So it's based on fact that there were caution notices to be placed on facilities?
>
> A. No. Wait now. Not the – <u>I'm not objecting to the notices. I'm objecting to the danger posed by the notices.</u>
>
> . . .
>
> Q. Do you -- is it your understanding that RF signals are a danger at any distance?
>
> A. I'll switch that for you, sir. I believe that RF signals can be dangerous at any distance.

9

Hammer Dep Tr. 30:23-33:5, Meese Cert. Ex F., ECF No. 24.9 (emphasis added).  No reasonable factfinder viewing the above evidence could conclude that the Township's perceived danger of RF emissions did not significantly factor into its denial of the Application.

Defendants' arguments to the contrary are unavailing.  Defendants principally attempt to contrast improper concerns of "environmental impact" with the Township's purportedly "valid and justified concerns" regarding the "content" of signs "warn[ing] of danger associated with the small cell antennas."  Def. Opp. at 12-14.  This appears to be, at most, a distinction without a difference.  While not fully clear, Defendants seem to be arguing that the Warning Signs prove that the SWFs are dangerous, which is the precise type of rationale prohibited by the TCA.  See, e.g., Town of Ramapo, 701 F. Supp. 2d at 460 ("Environmental effects within the meaning of the provision include health concerns about the biological effects of RF radiation.").  To the extent Defendants are arguing that they denied the Application based on the proposed Warning Signs themselves, that is directly contradicted by Director Hammer's testimony and the October 2021 letter.[11]

Next, Defendants contend that independently of their concerns with respect to signage and RF emissions, the October 2020 Letter provided substantial evidence that the Application was denied due to aesthetic concerns.[12]  Courts have held, however, that "the fact that [a locality] relied on valid reasons to support its decision does not immunize its violation of a statutory limitation" and that "the fact that [a locality] gave valid reasons for its decision, which by themselves would

---

[11] Regardless, it is doubtful that a municipality may lawfully deny an application to install an otherwise FCC-compliant facility simply by stating that it objects to FCC-required signage warning of RF emissions.  Such a ruling would effectively nullify Section 332(c)(7)(B)(iv) whenever a warning sign is required.

[12] Defendants do not argue that they provided substantial evidence for the remaining two reasons cited in the October 2020 Letter: a negative effect on property values and Plaintiff's alleged failure to provide its agreements with the owners of the utility poles.  Indeed, the record contains no evidence with respect to property values, and the parties agree that Plaintiff did, in fact, provide the requisite agreements on September 20, 2020.  PSOMF ¶ 59.

10

be sufficient" is irrelevant. Loudoun Cnty. Bd. of Supervisors, 748 F.3d at 195; see also Town of Ramapo, 701 F. Supp. 2d at 460 ("[A]ny decision actually based on environmental effects is a violation, whether other legitimate reasons factored into the decision or not.").

Regardless, Defendants did not contemporaneously provide substantial evidence to support a denial based on aesthetics. Though the TCA permits a locality to deny an application based on the appearance of proposed equipment, "[a] few generalized expressions of concern with 'aesthetics' cannot serve as substantial evidence." New Cingular Wireless PCS LLC v. Zoning Bd. of Adjustment of Borough of N. Haledon, 469 F. Supp. 3d 262, 276 (D.N.J. 2020).

With respect to appearance, the October 2020 Letter provides:

> Also, the downconverter and disconnect equipment does not match or conform to existing utility facilities and equipment in the areas, and their appearance is inconsistent therewith. See section 22(a)(vi) of the Township Rules and Regulations Governing Road Openings, Right of Way Occupancy, and Storage Permits, adopted September 11, 2019.

Oct. 2020 Ltr. at 2. The internally referenced section 22(a)(vi) of the Township's regulations generally provides, in relevant part, that any telecommunications equipment installed on a utility pole must (a) match any theme established in the area; (b) match either the color of the utility pole or the color scheme of other equipment on the pole; and (c) be appropriately concealed, when the equipment's appearance is inconsistent with existing utility equipment. Meese Cert. Ex. D, at 10-11, ECF No. 24.7.

Critically, the October 2020 Letter does not explain how Plaintiff's proposed equipment failed to conform with existing equipment or otherwise violated the Township's standing regulations. Though Defendants' opposition now attempts to explain that the Township's grievance concerned the proposed downconverters' status as "standalone equipment" located "approximately halfway up the telephone pole," Def. Opp. at 17, this reasoning does not appear

11

anywhere in the October 2020 Letter. Defendants do not suggest that they informed Plaintiff of this alleged deficiency in a contemporaneous writing.

Though a municipality's written reasons for denying an application "need not be elaborate or even sophisticated," City of Roswell, 574 U.S. at 302, the locality must still provide "more than a mere scintilla" of evidence to support its conclusion, Biestek, 139 S. Ct. at 1154. Even if the Township had not cited safety concerns as a basis for denial, its bare assertion of nonconformance with existing equipment, without more, fails to clear this modest hurdle. See, e.g., Town of Ramapo, 701 F. Supp. 2d at 463 (finding that the town failed to provide substantial evidence for denial of permit to install telecommunications equipment where record reflected "generalized expressions of concern about aesthetics and property values—along with illegitimate expressions of concern about health hazards—but little more").

Consequently, Plaintiff is entitled to summary judgment on Count IV of the Complaint.

**C.   Remedy**

Having found that Defendants violated Section 332(c)(7)(B)(iv), the Court must now determine the proper remedy. Plaintiff requests an injunction directing Defendants to issue all permits necessary for Plaintiff to install the SWFs in the Application, along with costs and attorney's fees. Pl. Br. at 44, ECF No. 24.2.[13]

While the TCA does not contain an express remedy for violations of Section 332(c)(7), courts have concluded that the most appropriate remedy is typically "the award of injunctive relief in the form of an order to issue all necessary authorizations." Extenet Sys., Inc. v. City of East Orange, No. 19-21291, 2020 WL 7238154, at *7 (D.N.J. Dec. 9, 2020). This is particularly the

---

[13] Plaintiff requests substantially the same relief under each count asserted in the Complaint. See Compl. ¶¶ 91, 97, 105, 111, 118, 123, 130, 143. While the Complaint also summarily requests "damages" in its Prayer for Relief, see id. at 32, the Complaint does not tie such request to any particular cause of action, and Plaintiff does not seek damages in connection with the instant Motion.

case where the record shows that "[RF] emissions were a genuine and substantial concern" of the locality and where the other reasons cited by the locality lacked substantial evidence. Loudoun Cnty. Bd. of Supervisors, 748 F.3d at 195 (affirming district court's finding that "while the [locality] would, on remand, omit its concerns over radiation when giving reasons for denial of the application, the radiation concerns would nonetheless persist as part of the decisionmaking process"); see also Town of Ramapo, 701 F. Supp. 2d at 463 (collecting cases). The TCA does not, however, permit a prevailing plaintiff to recover attorney's fees and costs for a Section 332(c)(7) violation. See City of Rancho Palos Verdes, Cal. v. Abrams, 544 U.S. 113, 122-23 (2005).

Here, injunctive relief is appropriate based on the clear evidence that unlawful considerations regarding the safety of RF emissions infected the Township's decision-making process. The Court will therefore order the Township to issue all necessary permits and authorizations to enable Plaintiff to construct the SWFs proposed in the Application. However, because the TCA does not permit an award of attorney's fees, and because Plaintiff has not articulated a basis to recover fees or costs under New Jersey law, Plaintiff's request for an award of costs and attorney's fees is denied.

Finally, the Court will dismiss Counts I-III and V-VIII of the Complaint as moot, as each request relief identical to that which the Court now awards under Count IV. See City of East Orange, 2020 WL 7238154, at *7.

IV. **CONCLUSION**

For the reasons stated above, Plaintiff's Motion for Summary Judgment, ECF No. 24, is **GRANTED** as to Count IV to the extent Plaintiff seeks injunctive relief and otherwise **DENIED**. The Township is directed to issue all necessary permits and authorizations to enable Plaintiff to

construct the SWFs proposed in the Application within thirty (30) days of this Opinion. Counts I-III and V-VIII of the Complaint are **DISMISSED AS MOOT**. An appropriate Order follows.

Date: May 19, 2022  /s/ *Madeline Cox Arleo*
 **Hon. Madeline Cox Arleo**
 **UNITED STATES DISTRICT JUDGE**